The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. Court is in session. Today's case will be called as previously announced and times will be as allotted to counsel. The case today is Lisey Federico Rosa et al. v. James R. McHenry III, appeal number 24-1240. Attorney Arroyo, could you please introduce yourself for the record and proceed with your argument by unmuting your device? Good morning, Your Honors. May it please the court, I'm Attorney Annalisa Arroyo and I represent the petitioner, Mr. Lisey Rosa. With the court's permission, I would like to reserve two minutes for rebuttal. I'll be arguing for four minutes and my colleague will be arguing for four minutes after me. You may have two minutes. Thank you, Your Honor. The evidentiary standard applied by the immigration judge and upheld by the Board of Immigration Appeals in this case was wrong. In removal proceedings, the Department of Homeland Security bears the burden of proving alienage and the immigration judge must decide whether a respondent is removable based only on the evidence that was submitted by the department. The term removable is an umbrella that covers two types of non-citizens in removal proceedings, those who are inadmissible and those who are deportable. This is a very important distinction in this case. The Immigration and Nationality Act does not address the standard of proof when it comes to alienage. The standard of proof derives from Woodby v. INS. The standard of proof that the immigration judge must evaluate the evidence of alienage presented by the department is clear, unequivocal, and convincing when the non-citizen is charged with being inadmissible and present without being inspected, admitted, or paroled. Could you address the changes in the regulations regarding deportability and inadmissibility in 1996 and whether those changes affect your argument here about the burden of proof? Absolutely, Your Honor. So when Congress amended the deportability statute in 1996, Congress actually in their amendments included the two different standards that we are discussing to address different parts of the deportability statute. So for example, Your Honor, with the question of whether a non-citizen had received their notice to appear to removal proceedings, the standard was set as clear, unequivocal, and convincing. With respect to whether the department had demonstrated that a non-citizen was deportable, the standard was set as clear and convincing. The word unequivocal was left out of that standard. That is very important in my opinion, Your Honor, because with respect to proof of alienage, Congress was silent, and I believe that silence is telling. Words mean something in a statute, and if we are going to look at statutory interpretation, we have to look at every word that is included in the statute. Congress included the word unequivocal with respect to the notices to appear, did not include it with respect to deportability, and was silent with respect to proof of alienage. When Congress is silent, it is an indication that Congress intended to keep with the judicial interpretation of the standard, in this case, the judicial interpretation that came about in would-be V.I.N.S. in 1996. I had thought that was, based on the briefs for purposes of this appeal, I thought it was uncontested that the standard is clear, unequivocal, and convincing, and the issue simply is, is that a different standard from clear and convincing? So Your Honor, our argument is that it is a different standard from clear and convincing, and in addressing that question, Your Honor, if I may, the courts have discussed that in removal proceedings, in deportation proceedings, the stakes are so high because it protects both U.S. citizens from being wrongfully removed, and also because it addresses a jurisdictional requirement. So the question of proof of alienage determines whether or not that particular individual should even be in removal proceedings. So it cannot be met... Counsel, if the two standards are different, how do you measure the difference? So Your Honor, we look at what the courts, the Supreme Court specifically, has said before, and I would refer this Court to Schneiderman v. Edgerton. And what the Court said was that when that word unequivocal is there, it means that the evidence does not leave issue of doubt. That is higher than clear and convincing, and I can also refer the Court to Addington v. Texas, in which the Supreme Court clearly talks about the three different standards, and instead of narrowing it to one standard, it remended the case back to Texas so that Texas could decide whether to use clear and convincing or the higher standard of clear, unequivocal, and convincing in that case. So we turn to the courts, and we turn to what the Supreme Court has said in determining the difference, and it has been through and through determined that the word unequivocal means a higher standard, one that admits no doubt. Thank you, Your Honor. I will reserve my two minutes for rebuttal. Thank you. Thank you, Counsel. At this time, if Attorney Arrujo would please mute herself, and at this time, would Attorney Fisher-Pinkert please introduce yourself on the record to begin? May it please the Court, I'm Attorney Stephanie Fisher-Pinkert for the Petitioners. In this case, the government submitted a two-page long document labeled E-A-R-M, ERM, if you will, and for each member of the family to demonstrate their alienage. And the government tells us that ERM stands for alien, Enforce Alien Removal Module. And on the second page, it includes a narrative that has been titled — Let me interrupt you. If we agree with you about the burden of proof, why should we then determine if the government meant that burden? I think you argue in your brief, shouldn't we send this back? Absolutely, Your Honor. You should send it back. Okay. And then, do you agree that if we disagree with you about the burden of proof, then we should uphold the agency here? No, Your Honor, and that's specifically what I'd like to address. I think the evidence presented in this case does not even meet clear and convincing. We have these ERM summaries. We have these ERM summaries, and none of the sites the government makes reflects consideration of a document like the one presented here, because the use of ERM summaries is relatively new. For years, the government regularly submitted I-213s, and so there's a great deal of case law about that. But the only published case we have about the ERM summaries is the BIA's decision in Castrejon-Colino in 2015, and even that one says this doesn't contain sufficient details to meet the purpose for which it was submitted. Isn't it, just looking at it and reading the description of it, it seems like it's clearly a government generated from government data. It has, if you look at the information on it, there's plenty of information that establishes alienage, if it's correct, and your client did not challenge the accuracy of any of that information at all. He just challenged the accuracy of some other information on it, and the information he didn't challenge is information that he would know better than anyone. So, given that the government's put out this document, and he hasn't challenged anything on it, wouldn't that carry the burden? No, Your Honor, I don't think so, and that's because we can't pick and choose what parts of document are reliable. The only alleged source for the foreign nationality of my client would be his own statements that are in this document, but the document is riddled with inconsistencies. We don't have a preparer. We don't have signatures. I was saying, you know, there's no canonical list of things that we look to for reliability, but that presumption of reliability is rebuttable. That would all be reasonably telling if he was saying, that's not me, and he was saying, and the government says it is, and he said, no, it isn't, and then he points out there's all these other obvious mistakes, so why should you rely on that? But he's not even saying that's not me. But, Your Honor, the burden of proof is on the government. He's essentially not guilty. This isn't a criminal proceeding. When the government shows a form that says, this is you, and he doesn't dispute it, that's part of the information that the fact finder has. He disputes that that form is accurate, because there are so many inconsistencies and indicia of unreliability. I don't think that the government should be allowed to create a document tomorrow that says, I spoke with Stephanie Fisher Pinkert, and she says she's from Austria. You know, if they didn't really have that conversation with me in a language that I understand, I mean, here they're saying, he told us he's from Brazil, and he speaks Portuguese, and by the way, we only talk to him in Spanish. Those are two different things. Did you argue before the immigration courts that there might have been a language barrier between the petitioner? We argued all of the inconsistencies at each level, Your Honor. But not specifically a language interpretation issue? Your Honor, I'd have to look specifically to the transcript in that case, but I believe we would have brought it up that this document had several indicia of unreliability. That's time. Did Celia, do you have questions? No, I'm all set. Okay, thank you. Thank you, counsel. Please mute your device. At this time, would Attorney Pennington please unmute his audio and video and introduce himself on the record to begin? Thank you. Good morning. Greg Pennington for the Attorney General. I want to start before responding to those two specific arguments with a big picture here. When DHS finds a non-citizen unlawfully president in the United States, all they have to show is that that person is not a citizen of the United States. And it's telling, and while DHS has the burden, it's telling that petitioners have never made a claim to United States citizenship, and probably for good reasons, because they're citizens of Brazil. So I'll start with the responding to the clear and convincing standard. You know, traditionally in the common law, there's three standards of proof. There's the preponderance of the evidence, there's the clear and convincing standard, and there's beyond reasonable doubt. You know, as the Supreme Court noted in Cooper, which we cited and which the board cited here, that clear and convincing standard has just been known by many different names with many different adjectives. But it really is just that intermediate burden of proof, which means that something's highly probable. And what petitioners want is for the court to impose a beyond a reasonable doubt standard in this civil immigration proceeding. And in response to that, I would just point to Judge Selye's opinion in Conte, where the court refused to do that. In that case, it was a lawful permanent resident charged as being removable for an aggravated felony. And the court wrote that it refused to impose a beyond a reasonable standard in immigration proceedings. Doesn't, as I read Addington, it says there's a continuum, there are lots of different versions of a standard that along that continuum, there's some suggestion that there's a bunch that are intermediate, and this is included in those. But then at the end of the opinion, they seem to make very clear that there's a difference between clear and convincing, and clear unequivocal and convincing, with the state being required to meet only the former, but having the option to escalate to the latter. And if that's, unless I'm misreading Addington, that we have a Supreme Court opinion saying there are different standards, and we have the board applying the one that parties agree isn't applicable. If I recall Addington correctly, and I might not, it was a criminal case, a state criminal case. And here we have civil proceedings where traditionally the clear and convincing standard, and which Congress explicitly provided for in 8 U.S.C. 1229a, they repeatedly list clear and convincing and in DHS and the Attorney General's regulations at 1240.8 and 240.8, that clear and convincing standard is just throughout. It's not quite throughout, is it? Or else we wouldn't be here. Perhaps you could, I think, continue to try to distinguish that language in Addington. You also have to, not have to, but the Sixth Circuit, I think, in Ward, interpreted Addington in that very same way. Is that case distinguishable from the one here? I believe so. We talked about this in our brief, the different postures in that case. And I would then point to the Ninth Circuit's en banc decision in, what is it, Mondaca-Vega, where the court rejected this similar argument. But even if we get, move on past that, and the court does find that there is something more here, that standard is going to be met. What DHS submitted here was an EARM printout. It's an official government... Suggesting if we disagree with you on the burden and say that the higher, that a burden we determine is higher, the clear, unequivocal, and convincing standard, that we should decide the second issue and not send it back to the agency? Okay, I see. Because the agency did apply. But here I would argue two points. One, it would meet the standard, so remand would be futile, and for a couple of reasons. But wait, now you're losing me. If we were to hold, the BIA applied the standard of clear and convincing. If we were to hold that it should have been clear, unequivocal, and convincing, and that those two standards are different, what license do we have to go ahead and decree how the BIA would have applied the correct standard to that document? So, I would... Doesn't generally tell us we have to send it back to the board? Traditionally, yes. If, I guess, step one, if the court finds that there was an incorrect burden of proof, then the agency should be given the chance to apply that burden in the first place. But I would make a couple of notes here because the... Counsel, five minutes remaining. Five minutes. Thank you. So, there's a lot of board precedent dealing with the I-213. And so, even Petitioner recognized in their opening brief that the I-213, the actual paper document that was submitted here, that would have been sufficient to establish alienage. And so, what we have here is the EARM, and that's just how the Immigration and Customs Enforcement attorneys access the I-213 when they don't have a physical copy of the A file, the immigrant file. So, this is just the I-213 in the electronic world. DHS accessed it, and everything on this EARM printout gives the same information that is on the I-213. And with the weight of precedent out there on why an I-213 is sufficient to meet DHS's burden to show that a person is a non-citizen, the same should hold here. Each EARM submitted for each individual petitioner has their names, their A numbers, their identifying information, height, weight, occupation, citizenship. It's just replete with information of who these petitioners really are, and they have never contested any of that. Is what you say about the provenance of the document in the record? You said this is just how attorneys access one form, they generate this form, which is simply extracted from the other forms. Is that in the record? We don't have an I-213 in the record to compare it to. But do we have what you said about the relationship between the I-213 and this document in the record? We have the EARM printout, which says it's the I-213 summary. So, I guess the argument is that it's connected in the record based on that. But the information that is provided in the EARM module is accessed by ICE to get the 213. The I-213 is a paper document that is created by the Border Patrol when they first encounter a non-citizen and they interviewed them here. It was a family unit across the border and DHS interviewed them as a family. And so, the only inconsistency they raise regarding the narrative, the I-213 narrative in this EARM printout, is that there was a female pronoun used when arguably they were interviewing the male. But the document just says that a parent was interviewed because there was a minor present. The mother here was most likely interviewed. And again, there has been no argument that none of this information is correct, that they have a claim to United States citizenship. So, we would argue that if the court wanted to decide it, and we suggest that the correct standard of proof is one and only the intermediate standard of proof, that this document would meet it and that it would also meet a clear unequivocal and convincing standard if there was a higher burden of proof associated with that term. Is the I-213 itself in the record? It is not, Judge. Yeah. So, how can we gauge the accuracy of the alleged summary if we don't have the document that is supposedly summarized? Well, this is a government record still. It is information contained in an official government database. So, there we have the traditional presumption of regularity applied. And while it is rebuttable, there has been no rebutting of any of the biographical information. And again, that is what is important. Are these petitioners non-citizens? They are not citizens of the United States. And this information shows that they are not. And they have not rebutted that in any way. And so, the document was fairly admitted. It sufficiently shows that they are not citizens of the United States. And I know my time is running short on my clock. So, if there are no other questions. Sorry, I do have another question. Because I am really struggling with Addington's language. And I also read the Ninth Circuit case and the Sixth Circuit case quite closely. And when I asked you to distinguish Ward, the Sixth Circuit case, you said, well, we did that in our briefs. But I don't really see that in your briefs. And I am just wondering if you could do that here. To be honest, I am not super familiar with Ward off the top of my head. I would be happy to address it in a supplemental filing after the hearing. That is all right. I mean, I think your position is the Ninth Circuit case has the correct reasoning here on the burden of proof. And I am not quite sure what your position is on the end of Addington. Except maybe that took place in the criminal context. Although that is not really right either. Since I think that was a civil commitment issue in Addington. Okay. Yeah, I could be wrong. I apologize. I am happy to submit something after addressing Ward further. That is time. But we do believe Wendaka Vega is correct. And with that, I will not only ask the court to deny the petition for review, but thank the panel and the court and Petitioner's Council for the late rescheduling. I really do appreciate it. I would much rather have been in Boston. So, thank you. Thank you. Thank you, counsel. Attorney Pennington, please go ahead and mute your device at this time. Would counsel, for the petitioner, please unmute her device and reintroduce herself on the record to begin. She has a two-minute rebuttal. Thank you, your honors. Attorney Annalisa Ruggio on behalf of the petitioner. I would like to address some of the points made by the government. So, as the court has pointed out, Addington was actually a civil commitment case. It was not a criminal case. It was just like this case, a civil case. Furthermore, your honors, I would like to refer the court to addendum page 25, where there is a thorough discussion of the technology systems used by the Department of Homeland Security. The I-213, the ERM, is not a way to access the I-213. It is a separate and apart document, the I-213. It is a very specific document that was created. The ERM is an electronic module that was created. It is not the same document, your honors. It actually doesn't contain any signatures. It is not done concurrently with the alleged apprehension. It does not contain the name of the preparer. It furthermore does not contain the full narrative that is contained on an I-213. It does not contain nearly as much information that is contained within an I-213. So, it is a very separate and apart. In addition, your honor, I'd like to address Conte, which the government has mentioned in its oral argument. So, for Conte, the respondent is relying on the proposition that Congress ordained the use of clear and convincing. However, Conte referred to an individual who was charged as deportable, not inadmissible, and that is really irrelevant here because I think that the government is confusing the burden and the standard of proof, both. The burden here is not for the petitioner to demonstrate that he is an alien. Furthermore, when we are talking about somebody who is charged with being present without being paroled or admitted or inspected and with being inadmissible, the proof of alienage is not set by regulation as it is in the case of a person charged being deportable, which the regulation is clear. If my client was charged with being deportable, the standard would be clear and convincing. That's time. Thank you, your honor. Please continue. Finish your answer. The INA is silent with respect to the burden of the standard of proof of proving alienage. So, the government has intertwined different sections of the regulation and continuously cites to the deportability regulation and not the inadmissibility regulation. Thank you, your honors, respectfully. Thank you. Thank you, counsel. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed. Until the next session of the court, God save the United States of America and this honorable court. Counsel, you may go ahead and disconnect from the meeting at this time.